## Commonwealth v. Cope

*Donald B. Smith,* for Commonwealth.

*Eastburn & Gray,* for respondent.

KELLER, P. J., July 2, 1954.—This matter is before us upon a petition and rule directed to respondent Ellwood R. Cope to appear and show cause why he should not henceforth pay to the Commonwealth of Pennsylvania the full per capita cost of maintenance of his wife, Anna M. Cope, at the Norristown State Hospital, from the date of such order and thereafter so long as she remains a patient at said hospital.

Anna M. Cope was committed to the Norristown State Hospital by this court on May 10, 1937, under The Mental Health Act of July 11, 1923, P. L. 998, as amended. In said commitment, the court directed that her husband, Ellwood R. Cope, respondent herein, pay toward her maintenance the sum of $12 per week to the Department of Revenue and that the difference between said sum and the actual cost of maintenance be equally divided between the poor district and the Commonwealth.

Subsequently, to wit, on September 6, 1939, this court, after a hearing upon a petition filed by the attorney for the Department of Revenue of the Commonwealth for the appointment of a guardian for the said Anna M. Cope, adjudged the said Anna M. Cope to be a person of weak mind and unable to care for her property and estate which, at that time, amounted to approximately $1,873, and appointed the Doylestown National Bank and Trust Company as guardian of her estate.

On November 27, 1939, the Commonwealth of Pennsylvania filed a petition and obtained a rule upon respondent Ellwood R. Cope, as husband of the said Anna M. Cope, and upon her guardian, the Doylestown National Bank and Trust Company, to show cause why an order should not be made upon the said Ellwood R. Cope and/or the Doylestown National Bank and Trust Company, guardian of Anna M. Cope, to pay the sum of $482.64 to the Department of Revenue of the Commonwealth of Pennsylvania for the maintenance and care of the said Anna M. Cope from May 10, 1937, to April 30, 1939. After a full hearing on said petition and rule, this court, on January 3, 1940, directed respondent Ellwood R. Cope to pay the sum of $2.50 per week toward the support of the said Anna M. Cope, but refused to enter any order against her guardian for her past or future support. Exceptions were filed to this order by the Commonwealth and, after argument, the court, subsequently in an opinion filed on July 1, 1940, amended the order made on January 3, 1940, and directed that the Doylestown National Bank and Trust Company, as guardian of the estate of Anna M. Cope, pay to the Department of Revenue of the Commonwealth of Pennsylvania the sum of $482.64 in settlement of arrearages for her past support and maintenance at the Norristown State Hospital from May 10, 1937, to April 30, 1939. At the same time the

court further ordered and directed the said Ellwood R. Cope to contribute and pay $2.50 per week toward the support of the said Anna M. Cope; said payments to be made to the Commonwealth, and the difference between the said sum to be contributed by the said Ellwood R. Cope and the additional cost of maintenance for said patient in said hospital to be equally divided between the Bucks County Institution District and the Commonwealth of Pennsylvania. An exception was taken to this final order and the matter was appealed to the Supreme Court, which appeal was subsequently withdrawn and discontinued by order of the attorney for the Commonwealth.

On January 15, 1953, the Commonwealth obtained the rule now under consideration directed to Ellwood R. Cope, the respondent, to show cause why he should not be ordered to hereafter pay the full per capita cost of the maintenance of the said Anna M. Cope. Unlike the former petition and rule, this proceeding was not directed to the patient, Anna M. Cope, or to her guardian. This proceeding was filed under the Act of June 1, 1915, P. L. 661, and its amendments, 71 PS §§1783-84. On May 19, 1953, an answer was filed on behalf of the respondent, admitting certain allegations of the petition, denying others, and setting forth that the act under which the petition was filed had been repealed by The Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1361, and averring that the petition was improper in that it failed to set forth that the respondent is able to pay more than the amount of the original order.

Depositions were taken on behalf of the petitioner and these reveal that there is no dispute as to the cost of maintenance at the hospital and, although it fluctuates, it amounted to approximately $75 per month, at the time the depositions were taken.

Two basic questions were raised as the result of the respondent's answer. The first: Should the petition

and rule be dismissed because of a failure to aver therein that the respondent is financially able to pay the costs of maintenance of his wife? Second: If an additional order may legally be imposed upon the husband, is he financially able to pay any additional amounts?

Section 503 of the Act of July 11, 1923, P. L. 998, 50 PS §143, which was in effect at the time the existing order of support was made, provided that the cost of the care and maintenance of any mental patient in a mental hospital maintained wholly or in part by the Commonwealth should be defrayed from the real or personal property of such patient. If the patient had no property or not sufficient property to pay such expenses, then so much of said expenses as shall be in excess of any amount collected from the patient's property and paid on account of said expenses shall be paid by such person as is liable under the existing laws for his support, etc.

The Act of 1923, supra, was repealed by The Mental Health Act of June 12, 1951, P. L. 533, art. VII, sec. 701, as amended January 14, 1952, P. L. 2053, which provides with reference to the liability for the costs of care of a mental patient as follows:

"Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any State institution is hereby imposed, in the following order, against—

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support;

"(3) The Commonwealth or, in the case of an inebriate, the county or institution district in which he resides."

It is further provided in section 703 of said act, 50 PS §1363, with reference to the payment of the costs of care of a mental patient, as follows:

"(a) When any patient is committed by order of court, the committing court, at the time of commit-

ment, shall make an order for the payment of the costs of care of the patient.

"(b) When any patient is or has been admitted to any institution, any court of the County in which the patient resided prior to his admission shall have power to make an order for the payment of the costs of care of the patient.

"(c) Before making any order, the Court shall take into consideration the ability to pay of the patient or the persons liable for his support.

"(d) Any court having the power or duty to make an order shall have the power or duty to modify or revise the order from time to time, on cause shown.

"(e) Every order shall be entered in the prothonotary's office, and shall have the effect of a judgment."

Since there has been no joinder of the patient, Anna M. Cope, or her guardian in this proceeding, the question for us to determine is the legal liability of respondent Ellwood R. Cope for the cost of her maintenance while a patient at the Norristown State Hospital. There is no longer any question that, notwithstanding the Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781, subjects the property of an estate of an inmate in a State hospital to liability for maintenance, it does not release such inmate's husband of his primary common law liability for her support: In re Hannon, 52 D. & C. 163; Shaffer Estate, 68 D. & C. 351; Loeffler Estate No. 2, 74 D. & C. 205, and Commonwealth v. Lahovski, 29 Northamp. 373.

The sole question to be determined, therefore, is the legal ability of respondent Ellwood R. Cope to pay his wife's maintenance. This becomes a factual question and each case must stand on its own merits: Commonwealth v. Schmidt et ux., 70 D. & C. 335, 339. In Commonwealth v. Rumford (No. 2), 77 D. & C. 351-57 (1951), this court, speaking through Biester, J., in construing the term "legally able so to do" within the

meaning of the Act of June 1, 1915, supra, as amended, says on page 357:

"We are in accord with the well written opinion of Judge Henninger in Commonwealth v. Groller, 41 D. & C. 366, to the effect that the possession of capital assets is not conclusive of a person's ability to pay and that there is no enforcible obligation unless the person sought to be charged is, in the discretion of the court, financially able to make such compensation without incurring undue personal privation."

See Commonwealth v. Groller, supra; Commonwealth v. Clemson, 80 D. & C. 130.

According to the depositions taken in this proceeding, respondent, who resides on a farm owned by his mother, had a taxable income of $1,457.14 following the allowance of $600 personal exemption for himself and another $600 exemption for his dependent mother, in 1953. It would seem, therefore, that he had a net income, as distinguished from a net taxable income, of approximately $2,650, or $50 a week after taxes. This net income, figured on a farmer's income tax rate, however, does not reflect the same picture as would the same figure on an ordinary wage earner's rate. Respondent testified that he maintains a vegetable garden, one cow for milk for the family, chickens for the eggs, and that he sometimes butchers his own meat. He estimates his grocery bill at approximately $250 per year. His daughter and mother reside with him. His daughter is self-supporting but pays no board. Respondent admittedly owns farm machinery valued at approximately $10,000, subject to an indebtedness of $3,800. On the equipment, he took depreciation for 1953 in his tax return in the sum of $1,757.80. Respondent's present financial situation is considerably higher than it was when the prior order of $2.50 per week was made upon him in 1940 and, it would seem to us, that under his present circumstances he should be able to pay, without imposing an undue hardship

upon him, at least $7 per week. Accordingly, we make the following order:

*Order*

And now, July 2, 1954, the order heretofore made on January 3, 1940, requiring respondent Ellwood R. Cope to contribute $2.50 per week toward the support and maintenance of his wife, Anna M. Cope, is hereby amended, and the court orders and directs that henceforth the said Ellwood R. Cope pay to the Department of Revenue of the Commonwealth of Pennsylvania toward the support and maintenance of his wife, Anna M. Cope, while a patient in the Norristown State Hospital, the sum of $7 per week.